IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BNSF RAILWAY COMPANY,**<br><br>          **Plaintiff,**<br><br>v.<br><br>**DUANE ZOOK and<br>AMERICAN FAMILY<br>MUTUAL INSURANCE<br>COMPANY,**<br><br>          **Defendants.** | **Case No.  15-cv-4956-DDC-KGS** |

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff's Motion for Default Judgment (Doc. 6), and defendant American Family Mutual Insurance Company's Motion for Extension of Time to File (Doc. 8).[1]  Both parties have filed responses and replies.  For the reasons explained below, the court grants defendant's Motion for Extension of Time to File and denies plaintiff's Motion for Default Judgment.

   **I.     Factual and Procedural Background**

This motion arises from events in 2012 when Duane Zook started a fire that damaged plaintiff's wooden railroad bridge.  Zook was attempting to perform a controlled burn of land near the wooden railroad bridge, but he left the area before all the fires were extinguished completely.  Zook was insured by defendant under a Personal Liability Umbrella Policy.  Plaintiff sought to recover the damage to its bridge from defendant.  Defendant denied coverage based on an exclusion to the policy.  On February 25, 2013, plaintiff filed suit in Saline County,

---

[1] American Family Mutual Insurance Company is one of two defendants in the case.  Only American Family is involved in the matter addressed by this order.  The court thus refers to American Family as "defendant."

1

Kansas against Duane Zook and his brother, Sam. The court entered judgment against Duane Zook[2] on August 6, 2015, for $649,252.41. Plaintiff obtained an Order of Garnishment against defendant on September 22, 2015. Plaintiff then served the Order of Garnishment on Shannon Mercier, a receptionist at defendant's headquarters in Madison, Wisconsin, on September 30, 2015. Under K.S.A. § 60-736(b), defendant had 14 days until October 14, 2015 to "complete [its] answer."

Defendant then filed its answer on October 16, 2015. Defendant explains why the answer was filed late by affidavit. Doc. 7-1. In sum, the garnishment order did not arrive at defendant's law firm of Fleeson, Gooing, Coulson & Kitch, L.L.C., until after working hours on October 15, 2015. Defendant served its answer to the Order of Garnishment by fax the next day, October 16, 2015—two days after the deadline.

Defendant then removed this case to Federal Court based on diversity of citizenship on October 30, 2015. Doc. 1. After removal, and after filing an Answer in state court, defendant filed a Motion for Extension of Time to File its Answer on November 13, 2015.

Plaintiff did not respond to defendant's motion, so on December 1, 2015, Magistrate Judge Gary Sebeilus granted defendant's unopposed Motion for Extension of Time. Doc. 14. After missing the deadline to file a response to defendant's motion, plaintiff moved for reconsideration of the order granting defendant's extension. Doc. 15. Plaintiff's unopposed Motion for Reconsideration was granted on January 8, 2016. Doc. 18. Defendant's Motion for an Extension of Time and Plaintiff's Motion for Default Judgment are now before the court.

### II.     Motion for Extension of Time

---

[2] For no reason the court can find, Sam Zook is not referenced as a party in any documents after the Amended Case Management Order in the Saline County case. Doc. 1-5 at 27–31.

### a. Procedural Requirements

Plaintiff asserts that defendant has not complied with two procedural requirements for filing a motion for an extension of time. First, plaintiff asserts that defendant failed to comply with Local Rule 6.1(a), which provides that all motions for extension of time to perform an act must show "whether there has been prior consultation with other parties and the views of other parties." Second, plaintiff claims that defendant failed to plead its motion with specificity.

Plaintiff's first argument arises from D. Kan. Rule 6.1(a)(1). D. Kan. Rule 6.1(a)(1) requires moving parties to disclose whether they had consulted about the requested extension with the case's other parties and to identify the views of the other parties about the requested extension. Plaintiff claims that defendant's Motion for Extension of Time did not show whether it had conferred with plaintiff's counsel as D. Kan. Rule 6.1(a)(1) requires. Defendant's Reply explains that, when it filed the motion, plaintiff already had filed a Motion for Default Judgment, and thus, plaintiff's position already was well-known.

A plain language reading of the rule does not require that the parties confer, just that the moving party show whether the parties have conferred and, if they have, the views expressed by the other parties. The court agrees with defendant. When defendant filed the Motion for Extension of Time, any consultation with plaintiff was useless because plaintiff's view on the Motion already was known—plaintiff had filed a Motion for Default Judgment. The court thus finds to deny defendant's Motion in D. Kan. Rule 6.1(a).

Plaintiff's second argument against defendant's Motion for Extension of Time asserts that defendant failed to plead its motion with specificity. Plaintiff cites two Sixth Circuit cases which observe that a district court is justified in denying an extension of time based on excusable neglect when it is supported only by 'vague, conclusory allegations.' Doc. 21 at 4 (quoting

3

*Demann v. Ottawa Cty. Sheriff's Dep't*, 68 F. App'x 642, 644 (6th Cir. 2003)). The court does not view *Demann* as support for the outcome that plaintiff advocates. That the court may do something does not mean that it should. Defendant's motion incorporates by reference its Response to plaintiff's Motion for Default Judgment as support for its motion to extend. Doc. 8 at 2. The arguments incorporated by reference are sufficient. The court thus finds no basis for denying defendant's Motion because of "vague" allegations.

### b. Legal Standard

Motions for extending time are governed by Fed. R. Civ. P. 6. Fed. R. Civ. P. 6(b) provides that:

> When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> . . .
>
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

The Supreme Court has recognized that excusable neglect is something of an "elastic concept" and is not limited to "omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 392 (1993). "The court considers several factors in determining what actions constitute excusable neglect." *Topolski v. Chris Leef Gen. Agency Inc.*, No. 11-2495-JTM, 2011 WL 5921167, at *1 (D. Kan. Nov. 28, 2011). These factors are: (1) the danger of prejudice to the opposing party, (2) the length of delay caused by the neglect and its impact on judicial proceedings, (3) the reason for delay and whether it was in the reasonable control of the moving party, and (4) the existence of good faith on the part of the moving party. *Id.* Of the four factors, the "reason for the delay" is

an important, "if not the most important," factor in the analysis. *Id.* (citing *United States v. Torres*, 372 F.3d 1159, 1161 (10th Cir. 2004)).

### i. Danger of Prejudice to the Opposing Party

The first factor the court considers is the danger of prejudice to the opposing party. Defendant's Answer was due on October 14, 2015, and defendant filed it on October 16, 2015— two days late. Of note, our court has found excusable neglect in cases involving much longer delays. *See Lewis v. Sprint Nextel*, No. 08-2458-JAR, 2008 WL 5263782, at *2 (D. Kan. Dec. 5, 2008) (finding a delay of approximately one month between the original deadline and the motion for leave to file an answer out of time was not prejudicial); *Alsbrooks v. Collecto, Inc.*, No. 10-2271-JTM, 2010 WL 4067145, at *2 (D. Kan. Oct. 15, 2010) (finding that plaintiff had not been seriously prejudiced because the delay had been less than one month).

The parties strongly dispute whether plaintiff will sustain prejudice if the court grants defendant's requested extension. Defendant contends that plaintiff will sustain no prejudice if defendant's Answer is deemed timely. And, defendant argues that any prejudices plaintiff might suffer "pale in comparison" to denying defendant the opportunity to defend a $650,000 judgment. Doc. 7 at 13. Conversely, plaintiff argues it will sustain prejudice if defendant's motion is granted. Plaintiff asserts that defendant filed its answer just two days late, but it did not file its Motion for Extension of Time for about 30 days after the deadline. Plaintiff asserts that it "expected" defendant to file a timely motion for extension of time to for leave to "make its untimely completed answer timely." Doc. 21 at 8. And, because the "necessary procedural motion was not filed at or close to the time [defendant] completed its answer," plaintiff expended attorney's fees and resources drafting and filing its Motion for Default Judgment. Doc. 21 at 8.

The court is unimpressed by plaintiff's argument.  As discussed above, our court has found excusable neglect for delays far exceeding the two day delay at issue here.  Plaintiff received defendant's answer just two days after the deadline and knew then that defendant had appeared and intended to contest the Order.  Any attorney's fees incurred drafting a Motion for Default Judgment because it "expected" defendant to file a motion for an extension of time was a strategic decision that plaintiff or plaintiff's counsel made.  It did not produce prejudice caused by defendant's delayed response.  This factor weighs in favor of granting defendant's requested extension.

### ii. The Length of Delay Caused by the Neglect and its Impact on Judicial Proceedings

The next factor the court considers is the length of delay caused by the moving party's neglect and its effect on judicial proceedings.  Our court has described delays as long as two months as "relatively innocuous."  *Welch v. Centex Home Equity Co., LLC*, No. 03-2132-JWL-DJW, 2004 WL 2348295, at *1 (D. Kan. Apr. 23, 2004); *see also Blake v. Transcommc'ns, Inc.*, No. 01-2073-CM, 2005 WL 4705098, at *3 (D. Kan. Sept. 30, 2005) (finding that an answer of garnishee provided to plaintiffs seven days after the deadline could be called excusable neglect).

Defendant asserts the two-day delay in the case is insignificant because it has not postponed or threatened any deadlines or hearings.  But, plaintiff argues that defendant caused more than a two day delay—plaintiff points to the "nearly one month of duration" between defendant providing the Answer and its Motion for an Extension of time.  Doc. 21 at 11.  Plaintiff also argues that "[t]here has also been [] over 90-days of delay from October 14, 2015," defendant's answer deadline, to the point where all motions were fully briefed and the court was ready to proceed.  *Id.*

6

The court again is unimpressed. The 90-day delay plaintiff describes resulted from plaintiff's Motion for Default Judgment, not defendant's late filing. The only delay at issue here is the one caused by defendant filing its answer out of time—and this was just two days. At that time, plaintiff knew defendant had appeared and intended to contest the Order for Garnishment. Plaintiff then filed a Motion for Default Judgment, and the parties spent the ensuing 90 days briefing the various motions associated with it. The length of delay caused by defendant's late Answer was negligible. This factor also favors defendant.

### iii. The Reason for the Delay

The next factor the court considers is the reason for the delay and whether it was in the reasonable control of the moving party. The Tenth Circuit has recognized that "inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect." *Quigley v. Rosenthal*, 427 F.3d 1232, 1238 (2005). But, our court has provided several examples of what constitutes excusable neglect. In *Mohankumar v. Dunn*, Judge Brown found excusable neglect when plaintiffs missed the deadline to file a notice of appeal by one day due to a clerical error. No. 97-1555-WEB, 1999 WL 1253053, at *1 (D. Kan. Dec. 22, 1999). In *White v. O'Dell Industries, Inc.*, Judge Lungstrum found excusable neglect when a miscommunication about a due date occured, in part, because of an attorney's unfamiliarity with the local rules. No. 99-2315-JWL, 2000 WL 127267, at *2 (D. Kan. Jan. 14, 2000).

Defendant relies on the affidavit of Michael Barg, defendant's supervisory senior staff attorney, to explain the reasons for delay. Doc. 7-1. In sum, defendant explains the delay as the consequence of what happens "when a random-appearing legal document is dropped off at the front desk of a major corporation. It takes some time for the document to find its way into the hands of the proper person and, along the way, delays can occur for any number of innocent

7

reasons." Doc. 7 at 16. And, while defendant concedes that its handling of the letter does not present "not an optimal handling of the Garnishment Order," the delay was short and defendant took steps quickly to rectify the error. Doc. 7 at 16.

Plaintiff asserts that defendant mischaracterizes its fault since all the circumstances that led to the delay were "completely" in defendant's control. Doc. 21. But, the Supreme Court has recognized that excusable neglect is an "elastic concept" and not limited to "omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co.,* 507 U.S. at 392. In Mr. Barg's affidavit, he describes a number of defendant's employees who passed along the Order for Garnishment before it reached his desk, and that he did not see the service date before he sent it to defendant's outside counsel on October 15, 2015—one day past the deadline. Doc. 7-1 at 4–5. And, as soon as defendant realized the deadline had passed, it took steps to file the Answer immediately. *See* Doc. 7-1 at 6. Given that defendant did not realize its mistake until the deadline had passed and then took immediate steps to correct the mistake, this factor also favors defendant.

### iv. The Existence of Good Faith

The last factor is whether the movant acted in good faith. Here, no evidence suggests that defendant acted in bad faith when it failed to file in time. As soon as defendant realized its mistake, it took steps to correct it and faxed its answer the next day. "Absent a finding of good or bad faith, this factor is neutral." *Topolski*, 2011 WL 5921167, at *3. The court finds this factor neutral here.

### c. Conclusion

After considering all four factors, the court finds that defendant has met its burden to show excusable neglect. The court thus grants defendant's Motion for an Extension of Time.

### III. Motion for Default Judgment

Because the court grants defendant's Motion for an Extension of Time to File its Answer, the court deems plaintiff's Motion for Default Judgment effectively moot. Plaintiff moves for Default Judgment against defendant under K.S.A. § 60-736 , 60-741. Plaintiff asserts that because defendant failed to serve its answer within the 14 days required by K.S.A. § 60-736, plaintiff is entitled to default judgment under K.S.A. § 60-741. It reads:

> if the garnishee fails to answer within the time and manner specified in the order of garnishment, the judgment creditor may file a motion . . . [a]t the hearing on the motion, the court may grant judgment against the garnishee for the amount of the judgment creditor's judgment or claim against the judgment debtor or for such other amount as the court deems reasonable and proper. . . .

K.S.A § 60-741. With an extension of time to file its Answer, defendant's answer is deemed timely. The court thus denies plaintiff's Motion for Default Judgment.

### IV. Conclusion

The rulings announced above dispose of all pending motions in this case. But hoping that it will inform the future handling of this case, the court directs plaintiff to Fed. R. Civ. P. 1. While plaintiff's arguments on the motions were not meritless, they managed to turn an excusable two-day delay into several months of motion practice. The Federal Rules of Civil Procedure—like their counterparts in Kansas—are designed to secure the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Disputes invented after a plainly excusable two-day delay thwart those purposes. The court also directs plaintiff to *United States v. Shelton*, No. 14-10198-EFM, 2015 WL 7078931, at *3n. 16 (D. Kan. Nov. 13, 2015) where our court adopts the *Pillars of Professionalism* previously embraced by the members of the Kansas Bar. The *Pillars*, had plaintiff consulted them, would have saved the

9

parties and the court from the collateral issues that consume this order's attention.  *E.g.*, "Be willing and available to cooperate with opposing parties and counsel in order to attempt to settle disputes without the necessity of judicial involvement whenever possible."[3]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Extension of Time (Doc. 8) is granted

**IT IS FURTHER ORDERED THAT** plaintiffs' Motion for Default Judgment (Doc. 6) is denied.

**IT IS SO ORDERED.**

**Dated this 26th day of September, 2016, at Topeka, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**

---

[3] The Pillars are available on our court's website at: http://www.ksd.uscourts.gov/kbas-pillars-of-professionalism/ (last updated October 25, 2012).